GEORGE SCHECK, Respondent, v. CONNIE FRANCIS et al., Appellants.

First Department, November 20, 1969.

*Howard Breindel* of counsel (*Regan Goldfarb Powell & Quinn,* attorneys), for appellants.

*Solomon Granett* of counsel (*Halperin, Morris, Granett & Cowan,* attorneys), for respondent.

EAGER, J. The individual defendant is a well-known theatrical performer and she is the sole stockholder of the three corporate defendants which were organized and exist for the purpose of exploiting and carrying on her business interests as a performer. The plaintiff has acted as manager of the individual defendant for many years under a series of written contracts, the latest of which expired on January 4, 1967. Thereafter, the plaintiff did render services for the individual defendant and her corporations and negotiations were carried on between the plaintiff and one Levin, as attorney for the defendants, for the making of a new contract between the parties. Certain proposed contracts were prepared by the attorney but were not signed. Eventually, however, on or about April 1, 1968, an oral agreement was allegedly made between the parties for the employment of the defendant for a period of five years. Thereafter, Mr. Levin prepared four written contracts (one between the plaintiff and each of the four defendants, and on April 15, 1968 he transmitted the contracts as prepared, to the plaintiff with a letter, signed by him, reading:

'' Enclosed, in quadruplicate, are the employment agreements between you and GGC Productions Corp., Connie Francis Antigony Music Ltd., and Brookings Music Inc. Please sign all copies, have Connie sign all copies and distribute the copies as follows:

'' One set to me
'' One set for the office
'' One set for you
'' One set for Sol Granett [the plaintiff's attorney]
'' If you have any questions or comments, please call me.''

Following the receipt of the contract forms, the plaintiff signed all four of them and delivered them to the individual defendant. The plaintiff claims that this was done within a

few days after he received the papers but the individual defendant testified that she believed that this occurred a number of months after plaintiff received them and after defendant knew that she intended to terminate her relationship with him. In any event, the contracts were never executed by defendants and, in August, 1968, the plaintiff's services were terminated. Thereafter this action was brought against the defendants to recover for breach of an alleged agreement for the employment of plaintiff for a five-year term as provided for in the contract forms enclosed with the attorney's letter.

The defendants urge that the Statute of Frauds is a defense to the action but Special Term has denied a motion made pursuant to CPLR 3211 (subd. [a], pars. 5 and 7), with leave to defendants to assert the statute as a defense in their answer.

The applicable Statute of Frauds is section 5-701 of General Obligations Law which, insofar as relevant, provides:

"Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

"1. By its terms is not to be performed within one year from the making thereof".

Briefly stated, the plaintiff contends that the afore-mentioned letter, signed by the attorney for the defendants, and the enclosed unsigned documents, constitute sufficient compliance with the Statute of Frauds. Special Term, in denying the motion to dismiss, held that the applicability of the statute would depend upon the determination of disputed issues, including, "did the writings accurately reflect and contain all of the pertinent terms of the alleged oral agreement of the parties; did the alleged agent [the attorney Levin] have express or apparent authority to bind defendants or any of them; and, if not, are any unauthorized oral agreements presently enforceable by virtue of ratification or estoppel?"

While it is true that, under certain circumstances, unsigned writings may be considered in connection with a signed-writing to constitute a memorandum sufficient to satisfy the Statute of Frauds (see *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N. Y. 48), we conclude that this rule does not apply under the present circumstances where the unsigned writings consisted solely of unsigned contracts, as drafted by an attorney, and the signed writing is merely a covering letter, signed by the attorney, that is silent as to the terms of the alleged agreement and expressly requires the plaintiff to obtain signatures on the enclosed contracts.

The statute requires that some note or memorandum of the agreement of the parties, expressed in writing, be "subscribed" by the party to be charged or by his lawful agent. In applying the statute, one should not overlook the significance of the use in the statute of the word "subscribed". Certainly, where reference to several writings is required to ascertain the terms of the alleged note or memorandum, the statutory provision for a subscription requires a signature made with an intent to authenticate statements in existing writings as a note or memorandum of the alleged agreement. (See *James* v. *Patten,* 6 N. Y. 9, 11, 13; *Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co.,* 245 N. Y. 305; *300 West End Ave. Corp.* v. *Warner,* 250 N. Y. 221; *Clarkson* v. *Krieger,* 254 N. Y. 114; *Steinberg* v. *Universal Machinenfabrik GMBH,* 18 N Y 2d 943, affg. 24 A D 2d 886; *Zipkin* v. *Roshwald,* 219 N. Y. S. 2d 490.)

Although it is not necessary that the party or his agent subscribe or sign each of the several writings, it is essential that at least one of the writings be signed by the party or his agent with the intent, actual or apparent, to authenticate that writing (see *Mesibov, Glinert & Levy* v. *Cohen Bros. Mfg. Co., supra,* p. 310) and including the intent to authenticate the existence of a contractual relationship in accordance with terms to be established by reference to properly connected writings, then in existence. "At least one writing, the one establishing a contractual relationship between the parties, must bear the signature of the party to be charged, while the unsigned document must on its face refer to the same transaction as that set forth in the one that was signed" (*Crabtree* v. *Elizabeth Arden Sales Corp., supra,* p. 56), and it must appear that the party's signature to the signed writing was made or adopted "with intent to authenticate the information contained therein and that such information does evidence the terms of the contract." (See *Crabtree* v. *Elizabeth Arden Sales Corp., supra,* p. 54.) Accordingly, where one of the several writings alleged to constitute a note or memorandum of an agreement is a letter, the signature of the party to such letter may not be accepted as a subscription of a note or memorandum in compliance with the statute unless the letter purports in some manner to assume or authenticate a contractual relationship in accordance with terms sufficiently stated therein or sufficiently stated in other existing and properly connected writings. (See decisions, *supra.* See, also, *Clinton Paper Co.* v. *Mills Paper Co.,* 83 N. Y. S. 2d 875, 877 [McNALLY, J.].)

Here, the letter drafted by defendants' attorney, as stated on its face, was intended merely as a means of transmittal to the

plaintiff of unexecuted contracts with the request that the plaintiff sign the copies, have the individual defendants sign them for herself and her corporations, and then distribute the copies in the manner set forth therein. The letter was written and signed for a specified limited purpose and we may not infer from the signing and delivery thereof that the defendants intended thereby to establish a contractual relationship or to authenticate the terms of an agreement as set forth in the enclosed unsigned documents. The signatures which would authenticate the existence of the contracts within the meaning of the statute were to be made later after the parties read and approved the terms set forth in the proposed documents. The proof of an agreement for plaintiff's employment and the terms thereof are not established by the writings but proof of a binding agreement requires resort to parol evidence to show that the parties did orally agree to the terms set forth in the unsigned documents; the resort to such evidence is prohibited by the statute. Therefore, it is readily concluded that the signing of the attorney's transmittal letter is not available as a compliance with the Statute of Frauds. (See *Brause* v. *Goldman,* 10 A D 2d 328, affd. 9 N Y 2d 620; *Clinton Paper Co.* v. *Mills Paper Co.,* 83 N. Y. S. 2d 875, *supra*; *Singer* v. *Klebanow,* 9 Misc 2d 1016; *Matter of Perera,* 3 Misc 2d 1043, 1046.)

Looking at it another way, attorney Levin's letter may be considered merely as an offer in writing to contract, with specified terms laid down as the basis for the formation of the contract. The letter was merely a proposal to contract — a proposal that the parties should sign and deliver formal written contracts. Thus, the writing and the signing of the letter by the attorney was but a step looking toward the making of contracts which were to be formed when the parties executed the written documents which were enclosed. (See *Dorian Holding & Trading Corp.* v. *Brunswick Term. & Ry. Securities Co.,* 230 App. Div. 514, 518.) Inasmuch as the documents were never approved or signed by the defendants and parol evidence is necessary to establish that the defendants had previously agreed to the terms stated in the documents, there was no compliance with the Statute of Frauds.

There are no relevant or material disputed issues requiring a trial. Under the circumstances, it is immaterial whether or not the unsigned contracts enclosed with the letter accurately reflect and contain all of the pertinent terms of a prior alleged oral agreement between the parties. The very purpose of the Statute of Frauds would be thwarted if parol evidence were permitted to establish an oral agreement which does not purport

to be authenticated by any signature of the defendants or their agent. Furthermore, inasmuch as it appears as a matter of law that the signature of defendants' attorney Levin to the letter of transmittal did not represent the signing of a note or memorandum within the meaning of the statute, it is immaterial whether or not he had express or apparent authority to confirm the oral agreements allegedly made between the parties or to otherwise bind the defendants. Finally, the affidavits do not present any factual showing which would tend to establish that the defendants effectively ratified the alleged contracts or that they are estopped from denying the same.

The order, entered June 23, 1969, should be reversed, on the law, with costs and disbursements to the defendants, and defendants' motion to dismiss the complaint should be granted.

STEVENS, P. J., CAPOZZOLI, MARKEWICH and NUNEZ, JJ., concur.

Order entered June 23, 1969, unanimously reversed, on the law, with $50 costs and disbursements to defendants, and defendants' motion to dismiss the complaint granted; and the Clerk is directed to enter judgment against the plaintiff dismissing the complaint with costs.