Edward F. McLaughlin, J.
The above-entitled action has been submitted to the court for determination on an agreed statement of facts pursuant to CPLR 3222.
*212 This is a stakeholders’ action commenced by Mohawk Airlines, Inc., its retirement board and the individual members of the retirement board to determine which of the defendants are entitled to benefits due and payable to the proper beneficiary or beneficiaries under two retirement plans maintained by Mohawk Airlines, Inc., for the benefit of its employees.
The action was commenced due to the fact that the plaintiffs were "in doubt as to the identity of the proper person or persons lawfully and legally entitled to such benefits”.
Robert E. Peach, a key employee of Mohawk Airlines, Inc., until his death on April 20, 1971, was a member of both retirement plans maintained by the plaintiff. He was survived by his first wife, Minge C. Peach, whom he married on August 8, 1944, at Jacksonville, Florida. There were five children born of this marriage, viz: Robert E. Peach, Jr., born August 16, 1947; John M. Peach, born October 7, 1949; Timothy E. Peach, born April 16, 1951; David R. Peach, born August 5, 1953; and Martha M. Peach, born October 16, 1963 — all of whom survived the decedent. Robert E. Peach and Minge C. Peach entered into a separation agreement on May 20, 1970 and Robert E. Peach thereafter obtained a divorce from his first wife on May 27, 1970. He thereafter married Ann C. Peach on June 6, 1970, and one child, Ryan E. Peach, was born of this marriage on August 18, 1971. Both Ann C. Peach and Ryan E. Peach survived the decedent.
The decedent left a last will and testament dated February 20, 1970 which was duly probated in the Oneida County Surrogate’s Court on June 9, 1971 and letters testamentary were issued to Robert Groben, executor under said will, on the same date.
Under said last will and testament, Robert E. Peach bequeathed all his property, real and personal, to his surviving issue. No provision was made for his second wife, Ann C. Peach, nor their unborn son, Ryan E. Peach. She was entitled to her right of election under EPTL 5-1.1 and did make and file such election to take against the will.
The retirement plans involved consist first, of a retirement income plan (commonly referred to as the "fixed retirement plan”) approved December 18, 1958 and an amendment thereto effective May 1, 1962; and a second, a variable benefit retirement plan for salaried employees (commonly referred to as the "variable plan”) approved in June of 1965 and two amendments thereto, the first effective January 1, 1967 and *213 the second one also effective on the same date. Both retirement plans contained provisions regarding designations by employees of beneficiaries of the retirement benefits under the plans. Pursuant to the retirement plans and company procedures, Mohawk Airlines, Inc. maintained what is commonly termed a "benefit file” for each employee where such employee designations of beneficiary were contained.
There is no controversy as to the amount of monies due and owing to the proper beneficiary or beneficiaries under the retirement plans since the plaintiffs moved to pay these monies into court, to withdraw from the action and to be discharged from further liability under said plans which motion was granted by the Honorable J. Robert Lynch by an order signed September 28, 1972.
The stipulation and submission on agreed facts signed by the attorneys for each of the defendants is hereby incorporated into this decision as if fully set forth herein and ordered filed simultaneously with this decision with the Clerk of the County of Oneida.
The defendant, Minge C. Peach, claims the benefits of the retirement plans by virtue of certain writings contained in decedent’s benefit file (Exhibit 3). However, the representatives of the estate claim that she waived, released and renounced all claims thereto by the express terms of the separation agreement entered into between her and the decedent on May 20, 1970.
The defendant, Ann C. Peach, individually and as parent and natural guardian of Ryan E. Peach, an infant, claims that the writings in the benefit file (Exhibit 3) supplemented by the testimony at the examination before trial regarding this exhibit, are sufficient to show that decedent intended to effectuate a change of beneficiary to Ann C. Peach, on his insurance policies and on the retirement benefits. One memorandum was typed on Mohawk Airlines stationery with decedent’s initials typewritten, appearing in the top left corner. Defendant, Ann C. Peach, contends that his memorandum is sufficient to effectuate the change of beneficiary pursuant to EPTL 13-3.2, sections 3-401 and 1-201 (subd 39) of the Uniform Commercial Code and supporting case law.
The remaining defendants contend that the memorandum is insufficient under the statutes cited and the provisions of section IX, paragraphs 9.3 and 9.4 of the Mohawk Airlines fixed retirement plan.
*214 The question is simply whether the memoranda in the benefit files (Exhibit 3) satisfied the requirements found in EPTL 13-3.2, sections 3-401 and 1-201 (subd 39) of the Uniform Commercial Code, the case law and the requirements of the contracts.
Insofar as the claim of Ann C. Peach, the attorneys for the estate rely upon the provisions of EPTL 13-3.2 (subd [d], par [1]) which reads as follows:
"(d) A designation of a beneficiary or payee to receive payment upon death of the person making the designation or another must be made in writing and signed by the person making the designation and be:
"(1) Agreed to by the employer or made in accordance with the rules prescribed for the pension, retirement, death benefit, stock bonus or profit-sharing plan, system or trust.”
As opposed to this contention, the defendant, Ann C. Peach, calls attention to subdivision (2) of section 3-401 of the Uniform Commercial Code which reads: "A signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature”.
She also relies on subdivision (39) of section 1-201 of the Uniform Commercial Code which reads: " 'Signed’ includes any symbol executed or adopted by a party with present intention to authenticate a writing”.
This defendant also calls attention to section 46 of the General Construction Law entitled Signature which reads: "The term signature includes any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument in writing”.
In section IX of the Retirement Plan at subdivision 9.3 entitled Right to Designate Beneficiary, it is stated that the member may designate a beneficiary or beneficiaries to receive the death benefits herein described. Any designation made and the consent of the designated beneficiary or beneficiaries shall not be required for such revocation or new designation. All such designations or revocations to be effective shall be made in such form as may be required by the company and shall be duly executed, witnessed and received by the company during the lifetime of the member. As to the variable benefit retirement plan, the only proof is in the examination *215 before trial where it was stated that the designation of the beneficiary be done in the same manner that applies to the retirement income plan.
In reference to the claim of Minge C. Peach by the terms of the separation agreement between her and the decedent, she had agreed that she would not have any right, title or interest in the decedent’s property. Such agreement expressly providing that each party released, relinquished and discharged "any claim of any kind or nature whatever in, or to, any part of the estate or property of either party not effectually disposed of by such party during his or her lifetime, shall pass by testamentary distribution or by the laws of distribution with the same force and effect as if the parties heretofore had never been married.” This language is clear and unambiguous and the court holds by virtue of the terms of this separation agreement, Minge C. Peach has released, relinquished and discharged any claims to the pension benefits which are in issue in this case. (Teachers Ins. and Annuity Assn. of Amer. v Rogers, 41 AD2d 1020; O’Brien v Elder, 250 F2d 275.)
In relation to the claim of Ann C. Peach, individually and as parent and natural guardian of Ryan E. Peach, the court has appointed Edward J. Tyler, Rome, New York, as guardian ad litem of the infant, Ryan E. Peach, whose report is attached to this memorandum, such report having been reviewed by the court.
In this claim, the first issue to be determined is whether the typed initials "REP” appearing on the top of page 7 of Exhibit 3 and the written initials which appear on page 8 of Exhibit 3 can be found by the court to be the signature of the decedent, Robert E. Peach. Such a finding will depend on the intent of the party to be charged to authenticate the writing. The facts have been submitted to the court and reviewed not only through the exhibits supplied, particularly Exhibit 3, but also the oral testimony of William B. Caldwell, George Connell and Florence Rose, all of whom held key positions with Mohawk Airlines and were familiar with the retirement system of that company. The intent to be inferred in this case on the part of the decedent is a question of law. It has been held as a matter of law that "a signature is adequate if the party to be charged writes the letters 'O.K.’ in the margin or at the top and adds thereto his name either in full or by initials.” (Mesibov, Glinert & Levy v Cohen Bros. Mfg. Co., 245 NY 305, 310.) It is clear from pages 7, 8, 9, and 14 of Exhibit 3 that the plaintiff *216 concluded that the decedent intended to change the beneficiary designations in his insurance policies. Furthermore, page 8 listed change for retirement plan beneficiary in a memo from the director of personnel to Mr. Peach. It is clear from the examination before trial that Florence Rose clearly understood that the initials "REP” represented Mr. Peach’s signature and that she read pages 7 and 8 of Exhibit 3, together, which gave her the name of Ann C. Peach as beneficiary and that although the words "Retirement Plan Beneficiary” had no initials opposite it on page 8 of the aforesaid exhibit, she checked with her superior, John Purdy, personnel director, who advised her that it was to be included along with the changes of beneficiary on the various insurance policies listed on that page. She then made the handwritten notation on page 14, Exhibit 3, and also changed the beneficiary to Ann Peach, wife, effective June 25, 1970 as appeared on page 9, Exhibit 3 and also wrote the word "done” on the retirement plan beneficiary appearing on page 8 of Exhibit 3. This was further established at the examination before trial wherein Florence Rose, the benefit clerk, testified that subsequent to June, 1970 and up to the time of the death of Robert E. Peach, the beneficiary of the retirement pension fund was carried on their records as Ann C. Peach, indicating that plaintiff understood and acted upon decedent’s instructions.
It is not necessary that decedent’s signature or initials appear on each of the documents in Exhibit 3. The essential element is that one of the writings be signed by decedent with the clear and apparent attempt to authenticate it. The other documents containing notations by the benefit clerk affixed as decedent’s age and in accordance with the instructions refer on their face to the same transaction thus establishing by reference the connection between the various writings. (Scheck v Francis, 33 AD2d 91, affd 26 NY2d 466).
The court finds as a matter of law that these initials typewritten on Exhibit 3, pages 7 and Í4, and handwritten on Exhibit 3, page 8, constitute a signature of the decedent, Robert E. Peach, under the provisions of section 46 of the General Construction Law and subdivision (39) of section 1-201 and subdivision (2) of section 3-401 of the Uniform Commercial Code.
Having found that the initials "REP” appearing on the various documents of Exhibit 3 represent the signature of the *217 decedent, the court must now determine whether such signature is sufficient under EPTL 13-3.2 (subd [d], par [1]).
This section provides that "a designation of a beneficiary * * * must be in writing and signed by the person making the designation”. While the court is satisfied that the typed initials "REP” referred to above constitute a signature, as a matter of law, the court is concerned by the fact that the decedent’s initials do not appear opposite the words "Retirement Plan Beneficiary” on page 8 of Exhibit 3 and that page 7 of Exhibit 3 (subd [3]) refers to change of beneficiary on all of the policies to Mrs. Ann C. Peach. It is only page 14 of Exhibit 3 that the words "to include Pension Plan also per J.P.” appear in writing. These words were added by Florence Rose, as disclosed in her testimony at the examination before trial, after checking with John Purdy, personnel director, who orally advised her that the direction to include pension plan should be included and she acted on that authority and made the necessary entries on page 9 by amending the application to show Ann Peach, wife, as beneficiary of the pension plan effective June 25, 1970. The court realizes the liberality given to the interpretation of this section, since it is merely required that a writing shall be signed, not necessarily subscribed, and that the Legislature has made the situation entirely clear that a signature anyplace on a document evidencing an intent to authenticate the same is sufficient under EPTL 13-3.2.
Paragraph (1) of subdivision (d) of the aforesaid section requires that a designation be made in writing and signed by the person making the designation and be agreed to by the employer or made in accordance with the rules prescribed for the pension retirement plan. Since there were no initials "REP” opposite the item "Retirement Plan Beneficiary” on page 8 of Exhibit 3, whereas each of the other items relating to the life insurance were signed by initials "REP” which is sufficient as signature for the decedent, it could be asserted that the requirements of 13-3.2 (subd [d], par [1]) had not been met. However, it could equally be said that the combination of signatures on the various pertinent pages of Exhibit 3 could constitute the signature of decedent as to properly designate the beneficiary of the pension plans.
The court, however, in considering this case, must also turn to 13-3.2 (subd. f), the pertinent part of which states: "This section does not invalidate any. contract or designation which is valid without regard to this section.”
*218 A thorough review of the record in this case convinces the court that the request for beneficiary changes was required to be made only in whatever form and manner the company was accepting at this period of time.
Paragraph 9.3 of section IV of the Mohawk fixed retirement plan, discloses that the words contained in said section "all such designations to be effective shall be made in such form as may be required by the Company and shall be duly executed, witnessed and received”. This requirement is vague and cannot be said to require any specific form of designation except that it must be made in such form as required by the Company.
The company procedure allowed changes by interoffice memoranda, oral statements, telephone calls, etc., and the company personnel involved had operated under this system to effect changes in beneficiaries. Those involved, Florence Rose, formerly Florence Egitto, who made the handwritten notes contained on page 14 of Exhibit 3, and also added the name of Ann Peach, wife, as beneficiary, effective June 25, 1970, on page 9 of Exhibit 3, recognized the initials "REP” on page 8 of Exhibit 3, as being the signature of Robert E. Peach. She further testified that she was given pages 8 and 14 together which gave her the name of Ann Peach as the beneficiary and she made the entries relative to the changes of beneficiary in the retirement plan after contacting the personnel director, John Purdy, who advised her that change in beneficiary for the pension plan should be included along with the change of beneficiary for insurance listed on page 8, Exhibit 3, even though the initials "REP” constituting the signature did not appear opposite the words "Retirement Plan Beneficiary”.
The company, through the employees concerned, were aware of the intent of Robert E. Peach to change the beneficiary on the policies and the retirement plan as is evidenced by their actions. Further, it is clear that they were making such changes by interdepartmental memos, oral designations and otherwise as a matter of company policy and procedure and, therefore, the notice of change of beneficiary was required to be given only in the manner which the company was accepting at that given time, and that in accepting and acting upon such application, the company condoned such changes in procedure which was clearly outlined in the testimony at the examination before trial and by an examination of the aforesaid pages of Exhibit 3. Robert E. Peach was the president of *219 Mohawk Airlines. His initials were recognized as his signature whether they were typewritten as on page 7 or written as on page 8 in Exhibit 3. Further, it is clear from the record that the plaintiff Mohawk’s personnel understood and acted upon decedent’s instructions and named Ann C. Peach as beneficiary of the retirement benefits.
Under the circumstances, the court believes that the procedure followed in reference to the change of beneficiary to Ann C. Peach comes under the exceptions set forth in EPTL 13-3.2 (subd [f]) which states that this section did not invalidate a contract or designation which is valid without regard to this section. The company, itself, in accepting change of beneficiary request, altered its procedure only to the extent that it operated on interdepartmental memoranda and oral directions which the court finds as an issue of fact to be the valid perogative of the plaintiffs individually and as members of the Mohawk Airlines Inc. retirement board.
Under the facts in this case, EPTL 13-3.2 (subd [f]) does not invalidate any contract or designation which is valid without regard to that section such as in this case.
After reviewing the submission of agreed facts, which is made part of this record, the exhibits submitted to the court, the memoranda of law submitted by each of the parties, and after due deliberation, the court adjudges that:
1. The defendant, Minge C. Peach, is not entitled to the benefits of these pension plans by virtue of the separation agreement, in which she waived, released and renounced all claims of any kind and nature whatsoever in or to any part of the estate or property of either party not effectually disposed of by such party during his or her lifetime with the same force and effect as if the parties hereto had never been married.
2. The defendants, David R. Peach, Martha M. Peach, Timothy E. Peach, Robert E. Peach, Jr., and John M. Peach, are not entitled to share in the pension benefits since the only record shown was a memorandum of February 17, 1970 which was not signed by the decedent nor delivered to the benefit clerk at Mohawk Airlines, since no change was noted on the beneficiary records held by the benefits clerk as disclosed on page 9 of Exhibit 3.
3. That the defendant, Ann C. Peach, is entitled to the proceeds of the pension fund since from the record it appears that a valid change of beneficiary had been made by the decedent before his death, as disclosed in Exhibit 3, pages 7, 8, *220 9 and 14, and further that the court finds on the record that the decedent made his intention known to the plaintiff and followed the procedure which then was used and accepted by the company as of June, 1970 under paragraph 9.3 of section IV of the retirement plan, that "all such designations tó be effective shall be made in such form as may be required by the Company and shall be duly executed, witnessed and received”. The company accepted the manner of procedure for the change of beneficiary in this case and allowed changes by means of interoffice memoranda, and therefore waived and condoned any other procedure in the handling of this application for a change of beneficiary and did not notify the decedent at any time prior to his death that the change of beneficiary, as requested, had not been made or accomplished.
The court finds on the record that EPTL 13-3.2 (subd [f]) is applicable in that it does not invalidate a contract or designation which is valid without regard to this section. The plaintiff is, therefore, in a position to follow the procedure set forth in its contract and in this instance waive or condone any element of the requirement not deemed necessary under the existing circumstances, particularly since the plaintiff followed this pattern and there was no doubt that the intention of the decedent was made known to them for a change of beneficiary to Ann C. Peach, and that they understood and acted upon decedent’s instructions.
The report of the guardian ad litem, Edward J. Tyler, Esq., who has reviewed this matter in the interest of the infant, Ryan E. Peach, has been received and approved. Edward J. Tyler, Esq., is awarded the sum of $350 for his services rendered, such fee to be paid from the stakehold on deposit.